Your Honor, this is the first case in the morning called 208-778, People of the State of Illinois v. William C. Keene. On behalf of the appellant, Ms. Kathleen Hamill. On behalf of the appellate, Mr. Russell McPhail. Good morning, Your Honors. I'm Kathleen Hamill for the petitioner, Appellant William Keene. Good morning, Counselor. Mr. Keene, along with two co-defendants, Anthony Eilers and Michael Hoover, were all convicted after separate proceedings of armed robbery and first-degree murder committed against a Freeport gun shop owner named Robert Peters. Peters was found shot in the head and the chest in his shop. He also had received a severe throat wound, apparently administered by a knife, and I'm going to just refer to it as a stab. It's somewhere between a stab and a slit throat, apparently. Certainly a serious injury. The state's theory was that Mr. Eilers shot Mr. Peters and that Mr. Keene stabbed Mr. Peters. And on that theory, Mr. Keene was found to have qualified for the death penalty because he personally inflicted serious injury in the course of this murder. And he did, in fact, receive the death penalty based on that finding, that aggravating factor. His conviction and his sentence were both affirmed on appeal in 1993. In 95, at the end of 95, he filed his first, his only, pro se petition for post-conviction relief. He immediately received an appointment of counsel because it was a death case and filed a first amendment petition, a second amendment petition, and finally a third amendment petition was filed in 2004. In 2003, his sentence was commuted by Governor Ryan. We're familiar with the history of it, so I'd like you to skip right on past the number of petitions and all that and get to the meat of the case. Okay. Well, I just wanted to, you know, to understand where we're at. On the third amendment petition, there was a motion to dismiss filed by the state, which was granted. So this appeal is taken from that, which means that our standard of review here is taking all well-pleaded facts as true. Did the defendant make a substantial showing that his constitutional rights were violated? Counsel, as a threshold matter, can you tell us why the current claims are neither barred by raised judicata or waiver? Well, the reason is because we have newly discovered evidence, basically. At the, on the direct appeal, the claims that we're concerned with, which of course are a concern, they're intertwined because we have, on the one hand, we have whether or not Kruger's statement that I was told her that he was, that he had shot, or rather he was the person who had stabbed Peters should have been admitted, and whether or not Hoover's statement that it was actually not Keene who stabbed, that Keene did not tell him that he had stabbed Hoover's, which would, that was the only evidence that Keene did stab Hoover's, not Peters, was Hoover's testimony. So it all concerns the very same thing, whether or not Keene stabbed Hoover. So some of this evidence you're referring to was newly discovered, was discovered after the trial? What was discovered after the trial was, was more detailed concerning, well, Mr. Hoover's statement was his affidavit saying that he had lied on the stand and that, in fact, he never was told by Keene that he had stabbed Peters, was obtained in 1999. And so that was several years after the trial, and that affidavit has been submitted in support of that claim. The other side, it is true that this matter did come up at the trial. But there was a, right before Audrey Kruger was cross-examined, the state informed the defense that there was a report, a police report, that had been missing, and it represented that it only concerned the disposal of the gun, which, of the murder weapon, which Kruger apparently was present for. And the way they resolved it was they allowed defense counsel to meet with the officer who had written the report, Officer Sniders, and to look at his notes and talk to him about what the report contained. And apparently during that conversation, Sniders did reveal that during the interview that the report was written about, Kruger had told him that Eilers had told her that he had stabbed Peters. And that report was not available until after the direct appeal? Is that when it first surfaced? That's, yeah, that's the actual, as far as we can tell from this record, and it is rather a question of fact, but as far as we can tell from the record, the replacement report itself did not fall into the hands of defense until it was actually provided to a public counsel while the petition for rehearing following the affirmance of the conviction and sentence were pending. And then only was obtained from Eilers' attorney rather than from the state. And why was this replacement report, again, so critical to the defense case? Because at the end of the report, it contained the information not only that Kruger, that Eilers had told Kruger about the stab, that he had stabbed Peters, but it also said that this conversation took place about the same time as the gun was disposed of, which was a few days after the crimes. And also, the disposal of the gun is kind of the concealment of a weapon. If it happens proximate to the crime, it's actually part of the conspiracy and part of the sequence of events that are central to the crime. Well, what part of this information was not, I mean, when the defense counsel interviewed the police officer and then, say, much later at the appellate stage, the actual, well, not the actual, the replacement report is made available. Yes. So what's the difference between the replacement report and what the information defense counsel gleaned from his interview during the trial? Well, it appears from the record. It appears from the things that defense counsel had to say about the statement when he brings it up in this post-trial motion, which is the first time it's brought up. It appears that there was no information regarding when the statement was made. And this crime happened in November of 92, and the arrest didn't take place until, I believe it's May of 93. So the statement could have been made months after the crime, which would make it not at all proximate to the time of the crime. And that, in turn, makes it a problem for the chamber's factors as to whether or not the statement would be admissible because it is, of course, hearsay. I'm missing the – there's a replacement report that contains information regarding the statement by – what's his name again? Eilers. Eilers? Is it E-H or A-E-E-H? I think it's E-H-L-E-R-S. Yeah, okay, E-H, right. Okay, so he tells this woman that he did the stabbing. That he did stab. Right, yes, yeah. Okay, so now – but the defense counsel learned that information during the trial, right? Yes. Okay, and then that information is contained in the replacement report, but if the information was learned during trial, what's the difference? Because there's another piece of information about it, and that is when the statement was made, that it was made at about the same time the gun was disposed of. So when the defense counsel's interviewing the Eilers or Eilers, obviously, his name, he didn't find out when the statement was made? He only found out that it was made? And later in the – Yeah, well, it's a question of fact, I suppose, as to, you know, from what we can tell from this record, the record makes a substantial showing, our position is, that it makes a substantial showing that he was only told that the statement had been made and not when. And because there was nothing on the record for a – that would allow a appellate counsel to address when it was made. And this is important because the second chamber's factor is that where, you know, a hearsay statement would become admissible for a statement against penal interest if it was made spontaneously to a close acquaintance shortly after the crime. And the Supreme Court did know – well, they didn't say it was the most significant thing. They did know that there was no timeframe. And you said this replacement report puts in context the timeframe? Yes. Ms. Sandler, let me ask you this. What relief is Mr. King ultimately seeking in this case? Right now – Is he seeking to have his conviction overturned or that he was not eligible for the death penalty? Simply eligibility for the death penalty. And all he is seeking at this point is an evidentiary hearing on these allegations. And, you know, which the other – this is why the third chamber's allegation is that the statement – is whether or not the statement has some corroboration. And here, this is where these issues kind of come together. Hoover's statement – you know, when this case was presented on direct appeal, the Supreme Court said not only is it not corroborated that either stabbed Peters, but it's actually contradicted by Hoover, who said that King had told him that King stabbed Peters. However, in this post-conviction petition, we have this affidavit, which states that Hoover now says that King didn't stab Peters. And so – No, but you know, doesn't he say that King never told him – Never told him that he stabbed Peters. Because Hoover doesn't see it one way or the other. Nobody sees who stabs – You're right. You're right. Or slit the throat of the victim, correct? That's true, as far as we can tell. I mean, Hoover's materials are peculiar. And Hoover, of course, has taken the position that he himself didn't stab Peters. And so that does leave out – That narrows down the field, doesn't it? Yeah. So we believe that we've made a substantial showing that either the – well, actually both. The State failed to reveal all of this information. And I should add, another thing that we have supporting this is the deposition of – the depositions both of Officer Sniders and Officer Whitmore, who were the two cops who interviewed Kruger and heard the statement. Sniders says that he prepared his replacement report on the very day that Kruger testified, which makes it very strange that it was never then tendered to the defense for the purposes of the sentencing proceeding, if nothing else. Because this doesn't really matter so much for guilt or innocence. Mr. King would be accountable, at least, for this murder. It was a felony murder charge. However, it makes all the difference in the world regarding his qualification for death. And then the other deposition we have, Whitmore's, actually says that he found Sniders' report to be insufficient because it left out the fact that not only was it said a few days after the crime, but it was said in a – under rather strange circumstances. It was while – during a sexual act, which makes it more likely that it was spontaneous and also, of course, increases the intimacy factor, which again, all this shores up the second chamber's factor and probably would have been viewed very differently by the Supreme Court had all these facts been on the record. And it was very remiss of the state not to tender Whitmore. Whitmore actually testified at the trial right before on the very morning that Kruger testified. He was – they were the first and the second witness. So he was really there. And there was no good reason for them not to have him meet with defense counsel as well in order to make sure that they would be informed of everything that was said by Kruger at that interview. Sam, you've already – you've also alleged there was some prosecutorial misconduct relative to the presentation of Hoover's testimony. What are you speaking of in that? Well, in the petition, the petitioner points out that right before Hoover was placed on stand for direct examination, this rather unusual procedure took place where the state asked to voir dire him regarding what he was going to say on the stand because he apparently – and they said he had come off his paper – apparently had departed from the testimony that he had agreed to give. And they were concerned about whether or not he was going to say what they expected. And, you know, reading between the lines, it appears that – I mean, this makes some showing that whatever it was he was – what they feared he might say would have been problematic to their case against Mr. Keene. And if it was – if he had made statements to the state that were favorable to the defense, they should have been disclosed. Are you basing that on – are you making suppositions or assumptions? Well, we're saying that what we have on the record to support it is, you know, that, is the fact that the state has – and it's true. I don't know for sure. But we also have Hoover's affidavit in 1999 basically saying that, you know, I lied on the stand. So between those two things, we say that's a substantial showing that requires an evidentiary hearing because this can't be resolved by what we have. Mr. Hoover himself has to be put on the stand and questioned about this. And the prosecutors actually probably need to be questioned. What about the failure of defense counsel to interview these witnesses prior to trial, including Mr. Hoover? Couldn't that have been done? Right. That is our other – the flip side of this. We say prosecutorial misconduct and that the state did not disclose these things. And also, ineffective assistance of counsel because defense counsel did not do that. And we have made a substantial showing. We believe that defense counsel didn't because there's no record of him having talked to Krueger, to Whitmore, to Hoover, to Sniders, to any of these key witnesses on the point of whether or not the petitioner is a shooter. Was any of this ever dealt with on a direct appeal to the Supreme Court? Well, Hoover matter wasn't at all. On the direct appeal, there was an allegation that defense counsel was ineffective for not having tried to use this material at the first phase of the sentencing hearing. The Krueger statement. Yeah, right. The Iowa statement to Krueger. We actually have, in supporting this, an affidavit from defense counsel in which he candidly states that that decision was not strategic. That this matter came up right in the middle of the trial. He states in the affidavit he had intended to research it to see if he could come up with an argument, such as the argument that it was admissible as an exception to the hearsay rule under the penal interest thing. And he never did it. And so the jury never heard that this, you know, statement had been made. And so made the decision that Mr. Keene was proven on reasonable doubt to have stabbed the victim based only on Hoover. Counsel, you'll have time for a rebuttal. Thank you much. Thank you. May it please the Court, my name is counsel, my name is Ross Benton, and I represent the people in this matter. I'd like to start off by mentioning, of course, first, to have this issue before the Court, they have to raise it as a violation. And they're choosing to raise it as a Brady violation. But to have a Brady violation as described in Brady and all of its subsequent cases, there must be undisclosed factual evidence. There is no undisclosed factual evidence in this case. These issues, these facts were present at trial and present on the appeal to the Illinois Supreme Court. So in essence, what happened is they have forfeited it. It could have been raised. It wasn't raised. They are not alleging anything new here. What they're saying is, well, we have some documents. These documents may have given us additional support. But there's no case law that says, in fact, you can overcome the res judicata or the forfeiture effect because you've come up with something, you know, in addition to what you had before. And that's what the Circuit Court of Stevens and County correctly found. Counsel, I asked the defense counsel that question. And what he said was there were things that surfaced years later in the replacement report itself that was not disclosed at the time of trial or post-trial proceedings that raised new information, putting the alleged admission in context as to time and circumstances, which would then make it admissible. Is that not correct? That is not correct. There is nothing in the replacement report that was not known at the trial. The actual statement was given at the trial by the police officer. It could have been done. They could have sought a continuance, as the Supreme Court has recently talked about in a case, People v. Lovejoy, where a defendant was given relief because he sought a continuance and it was denied. What they say in terms of time, first of all, the time was a couple of days later. That's not enough for something to be discovered quickly after. That's People v. Johnson. Two days later. And, in fact, it doesn't matter anyway. This was before the Supreme Court. The Supreme Court said the time, we don't know what the time is, but it wouldn't have mattered. It's not an important factor. In People v. Keeney, the Supreme Court said time wouldn't have mattered because there was no cooperation and there was no way to have a declarant available. Ailers would have pleaded the Fifth. So the fact is, because the Supreme Court has said it's not, it wouldn't have mattered. I don't think that, in fact, it's an issue that should trouble this court. In fact, not only is the Brady issue forfeited, it would be without merit anyway. There's no showing of any materiality. The Supreme Court said this was inadmissible hearsay and could not fall under the penal interest exception. In fact, that's what the defendant or the petitioner was coming to you today and saying, well, let's reexamine that under the penal interest. But you can't. That was raised already. And there's no other way to get this exception through. There's no other exception that it would fall under. So without admission, it's not material. Without materiality, there's no Brady claim. And, in fact, even if it was material, a point where you're not conceding at the least, it wouldn't have mattered. It would have depended on a co-defendant's statement, which are always viewed in suspicion. And, in fact- Wasn't it the co-defendant's statement that was relied on? Wasn't it Hoover's statement? If Hoover's statement is just as unreliable- Well, in fact, that, yes, it was done with. It was at trial Hoover's statement was relied upon. But it was also relied upon and found reliable and affirmed by the Supreme Court. You don't have Aylor's statement there. Aylor's statement was never given any type of- there was no chance to cross-examine. It wasn't material. And, in fact, the Supreme Court found that the statement, if it had been used, might very well have cut against the petitioner from Hoover. Let's approach it this way. What did Hoover- what was the evidence about Hoover's- what's the difference between Hoover's evidence at trial, which the Supreme Court says was the crux of the case, right? The Supreme Court said that was the crux. That was the final- it was corroborated. I would agree with you it was the crux, but the Supreme Court also found corroboration. Okay. And so now what's the difference? What does Hoover say later? Now, he recants that. Well, and that's another point to make. The judge on the post-conviction petition found that Hoover's statement was absolutely not credible. And, in fact- No, what I want to get to, though, is what the defense knew during the trial. The defense knew of the statement at trial. Which statement? Aylor's proposed statement, but there was no way to get that in. Because they didn't know when it was made. Now, that's one point, but that's certainly not the only point. It couldn't have met the chamber's factors, and that's what the Supreme Court said. There's no way that they could have cross-examined Aylor's. He would have pled the fifth. There's no time. Right, but the time becomes apparent post-trial, isn't that sort of the pointer? And there's no time. And also the Supreme Court found there could be no corroboration. That was a point they looked at and said if their argument could have been corroborated, it might have cut against it. So the Supreme Court has reviewed this. This issue, the facts have been there. The facts were there. Aren't you oversimplifying a little bit, arguably? You're saying the Supreme Court made this decision in this ruling based on information they had before it at the time. Was Snyder's replacement report in the record on direct appeal? The information from Snyder's report was in the record. But the replacement report was not, correct? The replacement report was not in the record. But there was nothing in the replacement report that the Supreme Court could not have raised or could not have raised by defense. The facts were there. The physical documentation was not. And I know of no case that, in fact, Brady states that as long as there are undisclosed facts, these facts were there. And to go back to, they make a strong showing or they try and show that Hoover's affidavit is critical. He's now recanted. But as I mentioned, the post-conviction court found there was no credibility. There's a letter, a letter that, by the way, the petitioner had and either never gave to counsel or there were good reasons counsel didn't use it, saying that the petitioner didn't use it. He then, in that letter, talks strategy. You should call me. I'll be helpful. I know you didn't do it. The trial testimony he then gives is 100% contrary to the letter. Then he takes a plea, saying I will be truthful. Then he takes or reverses the plea, says, in fact, I want to get out of the plea. Then says he himself didn't commit the crime, which was found not to be true by this court's opinion that people view Hoover. And, in fact, the affidavit, to show you how reliable it is, states clearly, and one of the main points of the affidavit is I was pressured, I was coerced, but that direct issue was raised before the court. This court in Hoover's appeal and this court had found nothing to substantiate at all and said there was none of that. In fact, I can point that out to you. That's the Exhibit 1F, pages 48 to 51, where the court finds that a claim of Hoover that he was coerced had no bearing. It's factual. It was not factually accurate. In fact, that's the main crux of this affidavit. Recantation affidavits are inherently not credible and are very rarely used by this court. There's a couple of other points I would quickly like to make. You talked, Your Honor, about you raised the question of ineffectiveness, which they said there was ineffectiveness. But the failure to timely discover these documents and the failure to talk to the police was certainly known at trial because they had the meeting with Detective Snyder. That clearly could have been raised on direct appeal. They did, in fact, raise other issues of ineffectiveness. So that's forfeited. And the other issue of ineffectiveness they raised is the failure to confront Hoover with the 1993 letter. And there's only two possibilities that would go with that. A, in fact, he gave counsel the letter, or B, he didn't give counsel the letter. Because he had the letter. We know he had the letter. It's Exhibit A in the record. He signs and initials the letter on a date a year before trial. So if he didn't give counsel the letter, then clearly counsel could have been ineffective for using it. And if he did give counsel the letter, if you look at what the letter says, that letter could not have helped Petitioner. In fact, it says all sorts of things that would have harmed Petitioner's case, such as, you know, call me, I will help you, we'll strategize. And that letter makes clear that Hoover and Petitioner were friends, and, in fact, they're strategizing together. So, Your Honors, in view of the fact that the issues raised here today, rating, alleged prosecutorial misconduct, which there's no support of, by the way, at all, except for Hoover's uncredible affidavit, and ineffectiveness are all issues that could have been raised on direct appeal and were not. And even if you go beyond that, they are clearly without merit. There are no factual circumstances that were not known by the time they appealed to the Supreme Court. So for those reasons, forfeiture, res judicata, and merits, we would ask you to affirm the decision of the Circuit Court of Stevenson County. Thank you, Your Honors. All right. For the defendant against Hoover. I just have a few things. There's really no question but that the timing and the circumstances under which the statement was made, you know, the Kruger statement, Eiler's statement to Kruger was made, were not on the record before the time of the appeal. Well, I'm not sure he's confining himself to what was on the record, is he? He's confining himself. I mean, he said you guys had it or could have found it. Yeah. You're making a different point. I want to know which one matters now. I mean, does it matter if it was on the record, if you had it available? Well, I'm saying because it's not on the record that we have to look at the reasons why. And it's either because of a Brady violation or it's because, and or, it's because of defense counsel's ineffectiveness. You know, the failure either to provide the information to the defense and or the failure of the defense to go and find it. So either way, there's error here that we have made a substantial showing that there is error here that. But I just want to make sure I understand. It doesn't matter if it was on the record or if it was available. Well, as far as the appellate counsel, as far as what the appellate counsel might be able to raise, it does. You know, so appellate counsel was on that appeal, was stuck with the record that he had. And it, you know, he made the best argument he could. Well, at the appeal, yeah. Okay. But I mean, I'm talking about what happened at the trial stage. It doesn't matter if it was in the record or not. No, that's the truth. That's the truth. So it doesn't matter whether it was on the record for that matter. For that purpose, yeah. That's true. But your point is that if it wasn't, if counsel knew about it and he didn't use it, then that's ineffective. Then he was ineffective. And if he didn't know about it because, you know, he had no way of knowing what was in the replacement report, the totality of what was in the replacement report, and what Whitmore would have told him, then he's ineffective for not having talked to Whitmore, basically. Regarding the letter, we don't know. The record is silent as to whether Mr. Key never provided that letter to defense counsel. And we would hope that an evidentiary hearing would clarify that one. That is relevant on one issue. If you're alleging that the state presented perjured testimony through Hoover, if the state was never aware of the letter or the contents, how would that weigh against the state? That would be an effective assistance because when Hoover was on the stand, he might have been cross-examined with that letter. Before you get to finally, I want you to go there, but counsel for the state argues that the Supreme Court said, or strongly indicated that it didn't matter because Ehlers would have taken the fifth anyway and it wouldn't have got in for that basis. We would have had him for cross-examination. And so there would be one chambers factor missing. But you don't have to have all the chambers factors. You just have to have enough to believe that the statement is reliable. And so our position is that if it's corroborated by Hoover's new affidavit and if it fits the second one, be spontaneously made to a close acquaintance shortly after the crime, and then of course it is against his penal interest, if that would be sufficient to render it admissible. Even if he would take the fifth, you don't dispute that? Well, at this point we don't know. That's another, you know, it's possible after all these years have gone by, maybe he would tell the truth. Well, what did the Supreme Court say about it? About that, well, what the Supreme Court said was that it wasn't, that he wasn't available at the trial. Because he would take the fifth? Yeah. Well, we can't counter that, can we? Only, you know, whether or not we want to explore whether or not this is true at an evidentiary hearing. And at this point he might, you know, if he were to testify at an evidentiary hearing, then of course, you know, we would have corroboration and it would become admissible. But you're right, at the trial level it was not, you know, that wouldn't have been available. But we still say that if this other information had been there, there would have been enough for the court to have found that the chambers factors were met. Last, I just want to say that regarding the reliability of Hoover's recanted testimony, there's no question but that the law says over and over that a recanted statement made by a, or testimony made by a, testimony recanted by a co-defendant is not reliable. However, here it's not standing alone. It's also somewhat corroborated by the Kruger statement. And so, you know, that's where these are related. And most importantly, credibility is not an issue on second stage post-conviction proceedings. The court is supposed to take all the materials as true and then decide whether or not if these are true, error occurred or, you know, constitutional rights were violated. So that really wasn't an issue here and it shouldn't have played into the court's decision. Okay. Thank you, counsel. Thank you both for your arguments. The matter will be taken under advisement. Decision will issue in due course. Be sure to reach us for the next case.